[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 19-11495
Non-Argument Calendar
_____

D.C. Docket No. 6:17-cv-01841-DCI


JAMES DEWEY BAILEY,

Plaintiff-Appellant,

versus

COMMISSIONER OF SOCIAL SECURITY,

Defendant-Appellee.


_____

Appeal from the United States District Court
for the Middle District of Florida
_____

(January 31, 2020)


Before MARTIN, ROSENBAUM, and EDMONDSON, Circuit Judges.

PER CURIAM:

James Bailey appeals the district court's order affirming the Social Security Commissioner's denial of Bailey's application for disability insurance benefits ("DIB"), 42 U.S.C. § 405(g).  Reversible error has been shown; we affirm in part and reverse in part the district court's order; we remand with instructions to vacate the Commissioner's decision and to remand to the Commissioner for further proceedings.

Our review of the Commissioner's decision is limited to whether substantial evidence supports the decision and whether the correct legal standards were applied.  Winschel v. Comm'r of Soc. Sec., 631 F.3d 1176, 1178 (11th Cir. 2011).  "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion."  Id.  "If the Commissioner's decision is supported by substantial evidence, this Court must affirm, even if the proof preponderates against it."  Dyer v. Barnhart, 395 F.3d 1206, 1210 (11th Cir. 2005).  Under this limited standard of review, we may not make fact-findings, re-weigh the evidence, or substitute our judgment for that of the Administrative Law Judge ("ALJ").  Moore v. Barnhart, 405 F.3d 1208, 1211 (11th Cir. 2005).  We review de novo the district court's determination about

2

whether substantial evidence supports the ALJ's decision.  Wilson v. Barnhart, 284 F.3d 1219, 1221 (11th Cir. 2002).

A person who applies for Social Security DIB must first prove that he is disabled.[*]  See 20 C.F.R. § 404.1512(a).  The Social Security Regulations outline a five-step sequential evaluation process for determining whether a claimant is disabled.  20 C.F.R. § 404.1520(a)(4).  The ALJ must evaluate (1) whether the claimant engaged in substantial gainful work; (2) whether the claimant has a severe impairment; (3) whether the severe impairment meets or equals an impairment in the Listings of Impairments; (4) whether the claimant has the residual functional capacity ("RFC") to perform his past relevant work; and (5) whether, in the light of the claimant's RFC, age, education, and work experience, there exist other jobs in the national economy the claimant can perform.  Id.

Appling the five-step evaluation process, the ALJ first determined that Bailey had engaged in no substantial gainful activity since his application date. The ALJ then determined that Bailey had the following severe impairments: disorders of the spine, cervical radiculitis, mild carpal tunnel syndrome, left cubital tunnel syndrome, hypertension, psoriasis, Guillain-Barre Syndrome ("GBS"),

---

[*] Disability is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).

chronic inflammatory demyelinating polyneuritis, polyneuropathy, history of diverticulitis, history of muscle weakness, and history of benign prostatic hyperplasia.

The ALJ next determined that Bailey had the RFC to perform light work with limitations. Among other limitations, the ALJ determined that Bailey could sit, stand or walk for up to 6 hours each within an 8-hour workday, and could lift and carry up to 20 pounds occasionally and 10 pounds frequently. In the light of Bailey's RFC, the ALJ concluded that Bailey was capable of performing his past relevant work as a dispatcher and, thus, was not disabled. The district court affirmed.

On appeal, Bailey argues that the ALJ failed to apply the correct legal standard to the medical opinions of treating physicians Dr. Yee and Dr. Garewal. Bailey says the ALJ erred in giving only "partial weight" to Dr. Yee's opinion. Bailey also contends that the ALJ failed to consider adequately and to specify the weight given to the medical opinion of Dr. Garewal.

In determining a claimant's RFC, the ALJ must consider all medical opinions in the claimant's case record together with other pertinent evidence. 20 C.F.R. § 404.1520(e). In deciding how much weight to give a medical opinion, the ALJ considers, among other things, (1) the examining relationship; (2) the

4

treatment relationship; (3) the extent to which the opinion is supported by medical evidence and explanations; and (4) whether the opinion is consistent with the record as a whole.  20 C.F.R. § 404.1527(c).  Absent "good cause" to the contrary, the ALJ must give substantial weight to the opinion, diagnosis, and medical evidence of a treating physician.  Crawford v. Comm'r of Soc. Sec., 363 F.3d 1155, 1159 (11th Cir. 2004).  Good cause may exist under these circumstances: (1) the treating physician's opinion was not bolstered by evidence; (2) evidence supported a contrary finding; or (3) the treating physician's opinion was conclusory or inconsistent with the doctor's own medical records.  Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997).

"[T]he ALJ must state with particularity the weight given to different medical opinions and the reasons therefor."  Winschel, 631 F.3d at 1179.  We will not affirm a decision "when the ALJ fails to state with at least some measure of clarity the grounds for his decision."  Id. (quotations omitted).

Dr. Yee

Dr. Yee is Bailey's primary care physician.  On 10 March 2014, Bailey presented to Dr. Yee with weakness, tingling in his arms, and fatigue.  Dr. Yee sent

5

Bailey to the hospital emergency room, where Bailey was later diagnosed with GBS.  On 4 April 2014, Bailey saw Dr. Yee for a follow-up appointment.  Dr. Yee reported that Bailey was fatigued and weak, with a motor strength of 3/5 in the upper and lower extremities, a weak gait, and an "unremarkable" non-focal neurological exam.  Dr. Yee prescribed medication for GBS and referred Bailey to a neurologist for further evaluation.  Bailey visited Dr. Yee again on 7 November 2014, complaining of weakness and muscle spasms.  Dr. Yee's physical exam revealed largely the same physical conditions as on 4 April.  Dr. Yee prescribed additional medications for GBS and recommended "light home exercise" of at least 30 minutes of cardiovascular exercise 3 times per week.

On 12 December 2014, Dr. Yee completed a pre-printed form titled "Medical Assessment of Ability to do Work-Related Activities (Physical)."  On the form, Dr. Yee opined that Bailey could sit for 1-2 hours at a time for a total of 6-7 hours a day; could stand for 20 minutes at a time for a total of 4 hours a day; and could walk for 5-10 minutes at a time for a total of 2-3 hours a day.  Dr. Yee also opined that Bailey could lift or carry less than five pounds, needed both hands to carry things, and had poor hand dexterity and grip.  Dr. Yee said that Bailey's prognosis was "fair/chronic" given his GBS and neuropathy.

6

The ALJ assigned only "partial weight" to Dr. Yee's opinion from the Medical Assessment form, to the extent Dr. Yee's opinion was consistent with the ALJ's RFC assessment.  Substantial evidence supports the ALJ's decision.  The ALJ explained that Dr. Yee's opinion about Bailey's physical limitations was inconsistent with the objective medical evidence in the record, which the ALJ found showed an overall improvement in Bailey's neurological symptoms and medical condition over the course of his treatment by all providers.  Dr. Yee's assessment was also inconsistent with Dr. Yee's own treatment records, which prescribed a "generally conservative/conventional treatment" plan, including medication management and an at-home exercise routine.  Dr. Yee's opinion was also contradicted by Bailey's own testimony that he was able to work part-time as a delivery driver, had no problems sitting, could lift and carry up to ten pounds, and could perform (with some difficulty) several activities of daily living, including cooking, grocery shopping, driving, and mowing the lawn with a riding mower.

Dr. Garewal

Dr. Garewal (a treating neurologist) first saw Bailey on 15 April 2014. Dr. Garewal reported that Bailey had normal motor strength, reduced sensation in a stocking-glove distribution, slow fine finger movements, and a good stride. Dr. Garewal assessed Bailey with idiopathic progressive polyneuropathy, disturbance of skin sensation, and chronic inflammatory demyelinating polyneuritis. After conducting EMG/NCV testing, Dr. Garewal noted abnormal study findings with proximal polyradiculopathy as seen in GBS, mild carpal tunnel syndrome, and left cubital tunnel syndrome. Dr. Garewal prescribed medications, diagnostic imaging, and a social work consult.

At a follow-up appointment on 15 May 2014, Bailey presented with largely the same physical conditions as on 15 April, except Dr. Garewal reported that Bailey had "mild weakness in distal hands with grip/pad/dabpsoaritic changes in hands." Dr. Garewal continued Bailey's medications.

Also on 15 May, Dr. Garewal signed a handwritten "To Whom It May Concern" note that said, "I am treating [Bailey] for progressive neuropathy which is resulting in weakness, pain, and sensory deficits. I don't presently think he can work."

8

On appeal, Bailey contends that the ALJ committed reversible error by failing to mention or to assign weight to Dr. Garewal's 15 May handwritten note. We agree. Although an ALJ may decide to disregard the opinion of a treating physician upon a finding of "good cause," the ALJ must articulate clearly his reasons for doing so. Winschel, 631 F.3d at 1179. Here, where the ALJ made no mention of Dr. Garewal's opinion that Bailey was unable to work and failed to specify the weight given to that opinion, we cannot "determine whether the ultimate decision on the merits of the claim is rational and supported by substantial evidence." See id.

We acknowledge the Commissioner's contention that the first sentence of Dr. Garewal's 15 May note was duplicative of information already considered expressly by the ALJ. We also recognize that the final determination about whether a claimant is "unable to work" is one that is reserved to the Commissioner: a physician's opinion that a person is "unable to work" is thus not determinative and is entitled to no "special significance." See 20 C.F.R. § 404.1527(d). We stress, however, that the ALJ must consider all the claimed expert, medical opinions in the record and must specify the weight -- including no weight, if applicable -- given to each purported medical opinion and the reasons therefor. See id. at §§ 404.1520(e), 404.1527(c); Winschel, 631 F.3d at 1179; see

9

also Graham v. Apfel, 129 F.3d 1420, 1422 (11th Cir. 1997) ("[T]he ALJ has a basic obligation to develop a full and fair record."). We have said that failure to articulate clearly the reasons for giving less weight to the opinion of a treating physician constitutes reversible error. MacGregor v. Bowen, 786 F.2d 1050, 1053 (11th Cir. 1986).

The judgment of the district court is affirmed in part and reversed in part, and this case is remanded to the district court with instructions to vacate the Commissioner's decision and to remand to the Commissioner for further proceedings.

AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.